

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00291-CR

---

**FABIAN MAURICE ROBLEDO, APPELLANT**

V.

**THE STATE OF TEXAS, APPELLEE**

---

On Appeal from the 320th District Court
Potter County, Texas
Trial Court No. 083862-D-CR, Honorable Steven Denny, Presiding

---

June 28, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and YARBROUGH, JJ.

Following a plea of not guilty, Appellant, Fabian Maurice Robledo, was convicted by a jury of felony murder and sentenced to forty-eight years in prison.[1]  By a single issue, he maintains the evidence is insufficient to sustain his conviction.  We affirm.

---

[1] TEX. PENAL CODE ANN. § 19.02(b)(3).

BACKGROUND

During the evening hours of August 30, 2020, the victim and his friend, Charles Cannon, who were in their sixties and homeless, were in Cannon's broken-down SUV, which was parked near the Salvation Army. The victim was sitting in the front passenger seat watching a concert on his cell phone and Cannon was lying down in the back seat where he usually slept. Another homeless individual, Appellant, thirty years old at the time, approached the victim and accused him of stealing certain hygiene items provided by a shelter. Cannon heard them arguing and the incident escalated into a physical altercation. According to Cannon, the victim leaned his back against the center console and tried to kick Appellant away. But Appellant grabbed the victim by the ankles and pulled him out of the SUV causing his head to hit the ground.[2] Cannon called 911.

Cannon testified that from the back seat, he could partially see Appellant. Child safety locks prevented him from exiting the back seat and the front driver's side was blocked by a large cooler filled with ice and water bottles. He did, however, raise his head between the front and back seats and saw Appellant punching downward and beating, stomping, and kicking the victim until he was "out." Although he could not directly see Appellant's feet, he saw his legs moving and heard Appellant tell the victim, "I'll teach you to disrespect me."

After the altercation, the victim stood up and walked onto the street where he collapsed. Appellant opened the SUV's back door and told Cannon the victim was laying

---

[2] Cannon acknowledged he did not see the victim hit the ground but did hear it. He described it "[l]ike a watermelon dropping on a - - cement, just a thud."

2

on the street. Cannon went to the victim and saw "frothy, orange blood coming out of his mouth." He pulled him from the street but was unable to lift him on his own and Appellant assisted in placing the victim back in the passenger seat of the SUV.

Several officers were dispatched to the scene. One of the officers questioned a barely conscious victim who confirmed Appellant was the person who assaulted him. The officer observed blood on Appellant's clothes, hands, and shoes.[3] No injuries were visible on Appellant. He was arrested for assault and the victim was taken to the hospital by ambulance.[4] A toxicology report showed the victim was under the influence of alcohol and marihuana.

A neurosurgeon performed two surgeries due to severe brain injuries consistent with blunt force trauma. The victim, however, remained unconscious and on a ventilator.[5] When the surgeon determined he would not recover, the victim's family opted for organ donation, and he died on September 6, 2020.[6]

An autopsy revealed the victim suffered blunt impact trauma to the head. The forensic pathologist testified the head injuries were not consistent with a fall either forward

---

[3] DNA testing showed a high probability the blood stains came from the victim and Appellant was ruled out as a contributor.

[4] Once the victim was examined at the hospital, the severity of his injuries resulted in the charge against Appellant being increased to aggravated assault causing serious bodily injury. TEX. PENAL CODE ANN. § 22.02(a)(1).

[5] Law enforcement was never able to interview the victim due to his unconscious state.

[6] Appellant was charged with intentionally or knowingly committing an act clearly dangerous to human life, namely striking the victim with his hand or his foot or a combination thereof that caused the victim's death while in the course of and in furtherance of the commission of the felony offense of aggravated assault. The indictment was later amended to include as another manner and means that Appellant pulled the victim out of the SUV causing him to strike the ground which resulted in his death.

or backward because the victim would have sustained injuries to his hands and knees or to his elbows and backside. The victim's intoxicated state did not alter the findings.

Appellant presented two witnesses, the owner of a business with working surveillance cameras near the location of the incident and a private investigator who canvassed the area and found other businesses with surveillance cameras. They testified the investigation would have benefitted from footage and would have supported the defense's theory that the victim sustained his injuries from falling in the street due to his intoxicated state.

On being convicted of felony murder, Appellant perfected this appeal. His sole challenge is to the sufficiency of the evidence to support the conviction.

## STANDARD OF REVIEW

The only standard a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010).

We consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, any rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). We give deference to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to

4

weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). Each fact need not point directly and independently to the appellant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.*

We compare the elements of the offense as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Metcalf v. State*, 597 S.W.3d 847, 856 (Tex. Crim. App. 2020) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). In our review, we must evaluate all of the evidence in the record, both direct and circumstantial and whether properly or improperly admitted. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

## APPLICABLE LAW

Felony murder is an unintentional murder committed in the course of committing a felony other than manslaughter. *Lomax v. State*, 233 S.W.3d 302, 305 (Tex. Crim. App. 2007). The State was required to prove Appellant committed aggravated assault and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he committed or attempted to commit an act clearly dangerous to human life which caused the victim's death. TEX. PENAL CODE ANN. § 19.02(b)(3).[7] A person commits aggravated assault, a second degree felony, if he commits assault and causes serious bodily injury.[8] § 22.02(a)(1), (b). Serious bodily

---

[7] Appellant was charged with intentionally or knowingly committing the offense. An "intentional" or "knowing" aggravated assault charge can support a felony-murder conviction because that kind of aggravated assault is not a lesser-included offense of manslaughter. *See Lawson v. State*, 64 S.W.3d 386, 397 (Tex. Crim. App. 2001).

[8] Appellant concedes the evidence may be sufficient to prove assault but not murder.

5

injury is defined as bodily injury that creates a substantial risk of death or that causes death. § 1.07(46).

## ANALYSIS

Appellant criticizes law enforcement's investigation of the case and contends a proper investigation would have shown the victim injured his head when he fell in the street due to his impaired state and not due to the altercation between them. However, in conducting a sufficiency analysis, this Court reviews the evidence presented at trial and not the adequacy of law enforcement's investigation. Nor do we speculate on the lack of evidence presented by the State. *See Badger v. State*, No. 02-18-00475-CR, 2019 Tex. App. LEXIS 9037, at *13 n.5 (Tex. App.—Fort Worth Oct. 10, 2019, pet. ref'd) (mem. op., not designated for publication).

The State presented evidence from Cannon, an eyewitness, who testified Appellant, half the victim's age, pulled the victim from the SUV causing his head to hit the ground. He further testified Appellant used his hands and feet to deliver a beating which left the victim bleeding and his face swollen.

During cross-examination, Appellant attempted to discredit Cannon by pointing out inconsistencies in the two statements he provided—a handwritten a statement given on the night of the incident and a second statement made to a detective nine days later. The statement typed by the detective contained inconsistencies regarding whether Cannon was asleep during the altercation, whether he was distracted by the 911 call, and whether he actually witnessed the assault. Cannon, however, clarified he was awake and "heard everything from start to finish." He did not focus on what the 911 dispatcher was asking

6

because "he started watching what was going on." He conceded he did not see where Appellant made contact with the victim while stomping and kicking him but remained unwavering that he heard "the thumping and the beating." Cannon was also asked during cross-examination why he did not mention until trial that the victim had hit his head when he was pulled from the SUV. He responded that the omission was not intentional and was adamant he "heard [the victim's head] hit the cement."

During redirect examination, Cannon reiterated he told law enforcement on the night of the assault that Appellant pulled the victim from the SUV, used his hands to hit him, and his feet to kick him.[9] His interview with the detective revealed essentially the same information. Cannon was asked if he had seen anything else that night which would account for the victim's injuries, and he replied "no."

The surgeon and pathologist established the victim suffered serious bodily injury, specifically, blunt force trauma, which eventually caused his death. The pathologist ruled out the defense's theory that Appellant's injuries were the result of falling in the street while intoxicated because he did not sustain injuries consistent with falling forward or backward.

---

[9] Appellant being accused of pulling the victim from the SUV and using his hands and feet to inflict serious bodily injury were simply different manner and means alleged and not the gravamen of the offense. Under a hypothetically correct jury charge, the State was not required to prove the exact manner and means. *See Johnson v. State*, 364 S.W.3d 292, 298–99 (Tex. Crim. App. 2012). Exactly *how* he caused the victim's death matters not for purposes of criminal liability. *Jefferson v. State*, 189 S.W.3d 305, 315 (Tex. Crim. App. 2006) (Cochran, J. concurring).

7

DNA evidence linked the victim's blood to Appellant's clothing and shoes. He urges, however, that his contact with the victim's blood occurred when he helped place him in the SUV.

The case was peppered with conflicting evidence. It was within the jury's province to resolve any conflicts or inconsistencies in the evidence and any credibility issues against Appellant and in favor of the prosecution. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). We conclude the State presented sufficient evidence to show Appellant's conduct consisted of acts clearly dangerous to human life which subsequently caused the victim's death. Appellant's sole issue is overruled.

## CONCLUSION

The trial court's judgment is affirmed.

Alex Yarbrough
Justice

Do not publish.